UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
MARGARET MARY RUDDY,

               Plaintiff,          <u>MEMORANDUM & ORDER</u>
                                         21-CV-1504 (JS)

   -against-

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
-------------------------------X

APPEARANCES
For Plaintiff:       Howard D. Olinsky, Esq.
                      Olinsky Law Group
                      250 South Clinton Street, Suite 210
                      Syracuse, New York  13202

For Defendant:       Scott C. Ackerman, Esq., and
                      Sergei Aden, Esq.
                      Special Assistant U.S. Attorneys
                      Office of General Counsel
                      6401 Security Boulevard
                      Baltimore, Maryland  21235


SEYBERT, District Judge:

      Plaintiff Margaret Mary Ruddy ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the denial of her application for Social Security Disability Insurance Benefits by the Commissioner of Social Security (the "Commissioner"[1]).  (See

---

[1] Herein, the Court may refer to the Social Security Administration as the "Agency".

Compl., ECF No. 1, ¶ 1.)  Pending before the Court are Plaintiff's Motion for Judgment on the Pleadings (the "Motion"), and the Commissioner's Cross-Motion for Judgment on the Pleadings (the "Cross-Motion"). (See Motion, ECF No. 11-1; see also Support Memo, ECF No. 11; Cross-Motion, ECF No. 15; Cross-Support Memo, ECF No. 15-1; Reply, ECF No. 16.)  For the following reasons, Plaintiff's Motion is GRANTED, and the Commissioner's Cross-Motion is DENIED.

BACKGROUND[2]

I.    Evidence Presented to the ALJ

The Court first summarizes Plaintiff's employment history, relevant medical history, and her testimonial evidence at her disability hearing before the Commissioner's administrative law judge ("ALJ").  It then turns to the testimony provided by the vocational expert ("VE") at the disability hearing.

Born in 1962, Plaintiff is a high school graduate who completed less than one year of college.  She had been a medical biller.  Plaintiff has Type II diabetes, high blood pressure, and plantar fasciitis in her left foot; she is obese.

On June 26, 2018, Plaintiff was involved in a motor vehicle accident (hereafter, the "Accident"); as a result, she

_____

[2]  The background is derived from the Administrative Transcript filed by the Commissioner on October 7, 2021. (See ECF No. 10.) For purposes of this Memorandum & Order, familiarity with the administrative record is presumed.  Hereafter, the Administrative Transcript will be denoted by the Court as "R".

sustained a neck injury. (R. 406-446.) Plaintiff was diagnosed with cervicalgia and treated for chest and lower abdominal pain. (R. 406.) Since that time (hereafter, the "Onset Date"), Plaintiff has experienced neck pain and suffers from radiculopathy. (See, e.g., R. 22; see also, e.g., R. 850.)

Following the Accident, Plaintiff sought treatment with Dr. Joseph Gregorace; in his initial July 2018 evaluation of Plaintiff, De. Gregorace noted Plaintiff exhibited tenderness and spasms in her cervical spine, as well as a decreased range of motion. (R. 344-345.) He recommended physical therapy ("PT") and ordered an MRI of Plaintiff's cervical spine. (Id.) Plaintiff's July 2018 MRI revealed multiple herniated discs, as well as a bulging disc. (R. 529, 598.)

Plaintiff proceeded to engage in regular PT sessions multiple times per week from July to November 2018. Nonetheless, she continued to experience neck pain. (See, e.g., R. 338, 342, 533.) Therefore, Plaintiff was referred to pain management specialist Dr. Nizarali Visram for a consultation; Dr. Visram examined Plaintiff on October 1, 2018. (R. 338.) Despite PT, because Plaintiff's neck pain persisted, Dr. Visram recommended cervical epidural steroid injections. (R. 338-339.) However, "since the patient is diabetic and has some cardiac issues and is being followed by a cardiologist," Dr. Visram also recommended

3

Plaintiff secure clearance from her doctors before having said injections.  (See id. at 339.)

In early January 2019, six-and-a-half months after her Onset Date, Plaintiff had a follow-up visit with Dr. Gregorace. (R. 521-522.)  At that time, Plaintiff continued to complain of neck pain, as well as pain in her left arm.  (Id. at 521.)  Dr. Gregorace reported Plaintiff was "in the process of obtaining medical clearance by her internist[,] as she has a history of diabetes mellitus, for undergoing epidural cervical spine steroid injections."  (Id.)  Plaintiff also had a positive Spurling's test on the left side.  (Id.)  The Doctor recommended Plaintiff continue taking Neurontim.[3]  (Id. at 522.)  He also recommended Plaintiff "refrain from obtaining gainful employment at this time."  (Id.)

On January 15, 2029, Plaintiff visited podiatric physician Marzana Mleczko, D.P.M., complaining of pain in her left heel, which Plaintiff reported suffering for approximately a year with a gradual onset.[4]  (R. 708-709.)  "Pain is worse with ambulation, upon arising in the morning, after standing from a

---

[3]    "Neurontin is an anti-epileptic drug, also called an anticonvulsant.  It affects chemicals and nerves in the body that are involved in the cause of seizures and some types of pain." Drugs.com, Neurontin, available at https://www.drugs.com/neurontin.html (last visited Apr. 24, 2025).

[4]    In fact, prior to her Accident, Plaintiff had a history of chronic left foot pain caused by plantar fasciitis.  (See R. 297-306.)

seated position, . . . , with daily activity and increased activity towards the end of the day." (R. 709.) At that time, among other things, Plaintiff denied any back pain or joint disability. (Id.)

Yet, on January 17, 2019, Plaintiff visited Dr. Alexandre B. DeMoura of New York Spine Institute complaining of neck and lower back pain. (R. 717-718.) Among other things, Plaintiff reported: prior to the Accident, she did not have neck and back pain; she engaged in PT; "she could not proceed with cervical epidural due to her diabetes"; and, she was experiencing "numbness and tingling in to her left arm and left leg." (Id.) As to Plaintiff's neck, the Doctor observed Plaintiff "to be in excessive discomfort" with Plaintiff's range of motion being "painful" and "decreased" and there being "tenderness to palpation." (Id. at 718-719.) Similarly, as to Plaintiff's spine, the Doctor observed Plaintiff was "in excessive discomfort"; her "[r]ange of motion was painful" and "decreased"; and, there "was tenderness to palpation." (Id. at 719.) Based on his evaluation of Plaintiff, Dr. DeMoura: concluded Plaintiff's pain issues were the result of the Accident; recommended surgery, i.e., a cervical fusion; and, stated Plaintiff's prognosis was guarded. (Id. at 720.) The Doctor also discussed alternative forms of treatment with Plaintiff, including relative rest or modified activity. (Id.)

On February 25, 2019, Plaintiff attended a consultation examination with Dr. Dulun Hailoo.  (R. 722.)  Plaintiff presented with neck pain that radiated to her left upper extremity; she reported the related pain level was "7/10".  (Id.)  The Doctor noted Plaintiff managed her neck pain via PT, heating pads, self-massage, and pain medication.  (Id.)  In addition to further recording Plaintiff had Type II diabetes and hypertension, and was obese, the Doctor also noted Plaintiff complained of pain in her left foot, which was also at a "7/10" pain level, was constant, and worsened with weightbearing activities such as prolonged standing and walking.  (Id.)  Among other general observations regarding Plaintiff's appearance, the Doctor recorded: "[Plaintiff] had difficulty walking on her heels and toes due to pain in her lower extremities."  (R. 723.)  Similarly, Dr. Hailoo recorded Plaintiff's "[l]eft foot was tender to palpation on the sole of the foot."  (R. 724.)  The Doctor's diagnosis included finding Plaintiff had "[n]eck pain with radiation to the left upper extremity" as a result of the Accident and plantar fasciitis in her left foot.  (Id.)

Plaintiff continued seeing Dr. Gregorace.  On February 28, 2019, she had a follow-up visit with the Doctor, who reported Plaintiff presented with "complaints of neck pain with pain in the left arm."  (R. 726.)  Among other things, Plaintiff continued to test positively on the Spurling test for her left side; her range

6

of motion of her cervical spine registered below normal.  (Id.)
Plaintiff reported to Dr, Gregorace that she was contemplating
cervical spine surgery, but she continued with "rehabilitation
medicine treatments." (Id.)

At a June 6, 2019 follow-up evaluation with Dr.
Gregorace, Plaintiff complained of neck pain and pain in her left
arm, with the Doctor finding weakness in Plaintiff's left shoulder
abduction.  (R. 805.)  Once more, a Spurling test of Plaintiff's
left side was positive, and her cervical spine passive range of
motion was below normal.  (Id.)  The Doctor noted:  "As she is
diabetic, [Plaintiff] is not a great candidate for epidural
cervical steroid injections."  (Id.)  This coincided with
Plaintiff's reporting she did not want to consider cervical spine
surgery at that time.  (Id.)  Dr. Gregorace referred Plaintiff "to
a pain management anesthesiologist for evaluation for cervical
spine anesthetic nerve root block injections." (Id.)  The Doctor
also advised Plaintiff: to continue with PT; continue taking pain
medication; and, utilize a home cervical spine traction device to
complement her PT treatments.  (R. 806.)

Similarly, at a July 11, 2019 follow-up evaluation with
Dr. Gregorace, Plaintiff continued to complain of neck pain and
pain in her left arm.  (R. 802.)  She exhibited spasms throughout
her cervical spine and her cervical spine passive range of motion
continued to register below normal; further, Plaintiff

7

demonstrated diminished motor power at the left shoulder abduction. (Id.) The Doctor increased Plaintiff's dosage of night-time pain medication and recommended an orthopedic spine consultation. (See id.)

Additionally, on June 11, 2019, Plaintiff had a consultation with neurological specialist Itzhak C. Haimovic, M.D. (R. 848-850.) Dr. Haimovic reported Plaintiff was in constant pain and had marked limitation of motion of her neck. (R. 848.) An MRI and EMG "revealed pathological changes consistent with left cervical radiculopathy." (Id.) The Doctor also reported Plaintiff had, inter alia, numbness in feet and hands, neck pain, and arm pain. (R. 848-849.) As for motor-related evaluation: Among other observations, Plaintiff had: reduced strength (a "4/5" measurement) in her left triceps; "[m]arked limitation of motion of the neck"; and, well-below normal flexion measurements. (R. 849.) The Doctor opined Plaintiff suffered from "Left C7 radiculopathy". (R. 850.)

II. Procedural History

On December 14, 2018, Plaintiff filed for disability insurance benefits alleging disability as of June 26, 2018 (hereafter, the "Onset Date"), due to neck pain, radiculopathy, diabetes, left foot pain, high blood pressure, and swallowing problems. (R. 38.) After Plaintiff's claim was initially denied on March 13, 2019 (R. 37-46), and again upon reconsideration on

8

June 25, 2019 (R. 48-58), she requested a hearing before an Administrative Law Judge ("ALJ"), which was conducted on February 11, 2020 (hereafter, the "Disability Hearing"). (R. 18-36.) Plaintiff was accompanied by a non-attorney representative (R. 16, 28-32, 34-36), and vocational expert ("VE") David Pritchard testified at the Disability Hearing (R. 16, 18, 32-35). (See id.)

At the Disability Hearing, Plaintiff testified: she has severe neck pain on the left side of her neck; the pain extends into her shoulder and down her left arm; the radiating pain causes her left hand to fall asleep; and, she experiences numbness and tingling in her left hand. (R. 22.) Plaintiff also stated she underwent PT for a one-year period, while covered by the insurance claim for the Accident. (R. 22-23.) She further testified she was still taking pain medication prescribed for her after the Accident, but only when she was experiencing severe pain; she refrained from taking it every night since the medication "knocked her out". (R. 24.) And, Plaintiff testified she would take over-the-counter medication, e.g., Extra Strength Tylenol, to manage her pain. (Id.) When asked by the ALJ about having injections for her neck or shoulder, Plaintiff explained: she "couldn't do it anymore because [she] ha[s] diabetes"; after an evaluation with a pain doctor, the doctor wanted her to have injections; "after discussing it with some family members who read all the information," it was her understanding "it could help but

9

it could also make it worse"; and, she ultimately decided not to have the injections. (Id.) Similarly, Plaintiff testified that consulting neurologist Dr. Haimovic recommended Plaintiff not have surgery based upon her diabetes. (R. 25.)

Additionally, Plaintiff testified her ability to walk and stand still was inhibited by her plantar fasciitis. (R. 26.) When asked about sitting, Plaintiff stated she was able to do so for "[m]aybe like 15 minutes" and indicated the type of chair or seat was a factor in how long she was able to sit. (Id.) Relatedly, because her prior job involved sitting at a desk all day and calling people on the phone "for long periods of time in the same position," Plaintiff testified she did not believe she could do such a job anymore. (R. 28.) And, because she experienced numbness and tingling in her left hand, with her hand falling asleep, Plaintiff stated she would not be able to work at a job requiring both hands, such as using a computer. (R. 29.)

As for daily activities of life, Plaintiff testified she: could not walk up and down the stairs with laundry; did light cooking only, e.g., microwaving something, makings a sandwich, heating up soup on a stovetop; could drive, but was unable to "turn all the way to the right or the left"; and had difficulty bending in the shower, making it difficult to cleanse herself. (R. 27.) She spends most of her days watching television. (R. 28.) As for Plaintiff's neck pain affecting her ability to concentrate,

10

Plaintiff testified her pain prevents her from thinking of anything else.  (R. 30-31.)

The VE also testified at the Disability Hearing.  (See R. 32-35.)  He stated that a hypothetical individual of Plaintiff's age, education and past work, who is limited to: "only lift and carry ten pounds occasionally, less than ten pounds frequently"; "stand and walk for a total of four hours in an eight-hour day"; "sit for a total of six hours in an eight-hour day"; "occasionally climb, balance, stoop, kneel, crouch and crawl", and who can "do no overhead reaching" would be able to do both of Plaintiff's past jobs of being a billing clerk and a collection clerk.  (R. 33-34.)  Upon examination of Plaintiff's Representative, the VE further testified that if such hypothetical individual was not able to look down or was able to look down only occasionally, such limitation would preclude working at Plaintiff's prior positions.  (R. 34.)  The VE also admitted that Plaintiff's past work requires the use of both hands consistently.  (R. 35.)

III. The ALJ Decision

In a May 26, 2020 decision, the ALJ found Plaintiff was not disabled (hereafter, the "ALJ Decision").  (R. 63-71; see also id. at 72-76 (List of Exs.).)  More specifically, while the ALJ found Plaintiff suffered from the severe impairments of cervical radiculopathy, diabetes mellitus, left plantar fasciitis, and obesity (R. 65), she also found said impairments or combinations

11

thereof did not meet or medically equal "the severity of one of the listed impairments [found] in 20 CFR Part 404, Subpart P, Appendix 1" (id. (bold emphasis omitted)).  Further:

> After careful consideration of the entire record, the [ALJ found Plaintiff] ha[d] the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). She c[ould] lift and/or carry up to 10 pounds occasionally and less than ten pounds frequently. She c[ould] stand and/or walk for 2 hours in an 8-hour day, and sit for 6 hours in an 8-hour day. She c[ould] occasionally climb, balance, stoop, kneel, crouch and crawl. She c[ould ]not perform overhead reaching with the upper extremities.

(R. 66 (bold emphasis omitted).)  The ALJ elucidated that, in making this finding, she:

> considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p.  [She] also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.

(Id.)  The ALJ explained she was required to engage in a two-step process when considering a claimant's symptoms:  (1) "it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms; and (2)

12

"[s]econd, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, [an ALJ] must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." (Id.) Further, as to the second prong of the analysis, "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, [an ALJ] must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities."

Particular to the Plaintiff, the ALJ found the evidence established Plaintiff: suffered from chronic left heel pain caused by plantar fasciitis; was obese; had hypertension, but there was no evidence of any complications from same; and, had diabetes which was "uncomplicated". (R. 67.) As to the Accident and Plaintiff's related complaints of chronic pain, the ALJ recognized Plaintiff: suffered from muscle tenderness, cervical spine spasms, and decreased spinal range of motion; had herniated discs, as confirmed by an MRI; and, was diagnosed with cervical radiculopathy, as confirmed by an EMG.[5]  (R. 67.)   The ALJ further reported the

---

[5]  "Electromyography (EMG) measures muscle response or electrical activity in response to a nerve's stimulation of the muscle.  The

results of Dr. Gregorace's October 2018 examination, which indicated Plaintiff suffered left upper extremity weakness on motion, cervical spine muscle spasms, and reduced ranges of motion. (Id.)  The ALJ also included Dr. Gregorace's diagnosis that Plaintiff had left sided cervical radiculopathy and the Doctor's prescription of pain medication for Plaintiff's neuropathic pain. (Id.)  Continuing, the ALJ set forth Plaintiff engaged in PT, but "remained symptomatic with neck and left arm pain." (R. 68.)  The ALJ also chronicled Plaintiff's various other visits with Dr. Gregorace, as well as other Doctors. For example, the ALJ included Plaintiff's January 2019 visit with Dr. Gregorace, where the Doctor found Plaintiff still experienced neck and left upper extremity pain; Dr. Gregorace also reported Plaintiff had muscle spasms throughout her cervical spine; reduced ranges of motion; and unchanged treatment regime. (Id.)  The ALJ also wrote: "More recent records from Dr. Gregorace document that there has been no clearance for the cervical epidural steroid injection due to the diabetes", and the Doctor "again prescribed Neurontin and physical therapy." (Id.)

---

test is used to help detect neuromuscular abnormalities."  Johns Hopkins Medicine, Home, Health, Treatments, Tests and Therapies: Electromyography (EMG), available at https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/electromyography-emg (last visited Apr. 30, 2025).

Furthermore, the ALJ summarized Plaintiff's February 2019 visit with Dr. Hailoo, a state agency medical consultant, who found Plaintiff's cervical spine motion was limited in all directions. (Id.) Notwithstanding also reporting Plaintiff demonstrated "5/5" strength in her upper and lower extremities, intact hand and finger dexterity, a "5/5" bilateral grip strength, among other findings, Dr. Hailoo also diagnosed Plaintiff with neck pain with radiation to the left upper extremity as a result of the Accident; he opined Plaintiff "had moderate limitations for heavy lifting and carrying, and moderate limitations for prolonged standing and walking." (R. 68-69.)

Then, the ALJ recapped Dr. Haimovic's June 2019 evaluation of Plaintiff regarding her neck and arm pain. (R. 69.) Among other observations, the ALJ noted Dr. Haimovic's finding that Plaintiff's motor power in her left tricep was "4/5", although "5/5" elsewhere. (Id.) She also reiterated the Doctor's finding of "marked" limitation of motion in Plaintiff's neck in all directions, as well as his impression of "left C7 radiculopathy". (Id.) Finally, the ALJ reported "Dr. Haimovic also opined that the claimant was 'not employable' at that time due to chronic neck pain." (Id.)

Nonetheless, the ALJ found Plaintiff's "statements about the intensity, persistence, and limiting effects of his or her symptoms. . . [we]re inconsistent with the evidence of record."

15

(Id.)  She discounted Plaintiff's claims of pain because, e.g., Plaintiff had intact sensation and "motor strength of 5/5". (Id.) The ALJ also underscored Plaintiff's declining to have fusion surgery, as well as Plaintiff's being "a candidate for injections", but not persuing such treatment.  According to the ALJ:  "There is no medical document to confirm her allegations that her other medication conditions, particularly diabetes, either make surgery or injection inadvisable."   (Id. (stating further: Plaintiff's "treatment has been conservative"; diabetes is controlled with medication; and "[h]er physicians have not documented that she must avoid surgery or injections due to diabetes"); see also id. at R. 70 (dismissing Plaintiff's diabetes, obesity, and plantar fasciitis as bases for finding she is disabled).)

As for the medical opinions and prior administrative medical findings, the ALJ stated she could not "defer or give any specific evidentiary weight, including controlling weight, to any" of them.  (R. 70.)  In conclusory fashion, the ALJ stated she found:  Dr. Hailoo's opinion that Plaintiff had moderate limitations for heavy lifting and carrying, and for prolonged standing and walking "somewhat persuasive", baldly stating it was consistent with the record evidence; Dr. Haimovic's December 2019 opinion that Plaintiff was unemployable because of her neck pain "not persuasive" and "not consistent with the medical record"; and, Dr. Gregorace's January 2019 opinion Plaintiff should not

16

seek employment was "not consistent with the evidence pertaining to the claimant's cervical spine impairment" and, therefore, "not persuasive." (Id.) Hence, the ALJ found Plaintiff retained a residual functional capacity for sedentary work. (Id.) And, based upon the testimony of the VE regarding a hypothetical individual similarly situated to Plaintiff, the ALJ found strong support for her determination that Plaintiff could "return to any past relevant work both as actually or generally performed." (R. 71.) Thus, the ALJ determined Plaintiff was not disabled. (Id.)

On January 25, 2021, the Agency's Appeals Council denied Plaintiff's request for review; therefore, the ALJ Decision became the final decision of the Commissioner. (R. 1-3.)

IV.  <u>The Instant Action</u>

On March 22, 2021, Plaintiff initiated the instant action. (See Compl.) Thereafter, on December 3, 2021, Plaintiff moved for judgment on the pleadings, requesting the case "be remanded for further administrative proceedings, including a <u>de novo</u> hearing and new decision." (Support Memo at 16.) Plaintiff puts forth three arguments in support of her Motion; the ALJ: (1) failed to properly evaluate the medical opinions, especially that of Dr. Haimovic (<u>see</u> <u>id.</u> at 8-13); (2) failed to adequately account for Plaintiff's limitations regarding manipulation, fingering, and typing in the RFC posed to the VE (<u>see</u> <u>id.</u> at 13-15); and (3)

misconstrued the record regarding Plaintiff not receiving epidural steroid injections (see id. at 15-16).

In response, the Commissioner cross-moved for judgment on the pleadings pursuant to Rule 12(c) asserting: the ALJ Decision should be affirmed; Plaintiff's Motion should be denied; and, thereafter, this action should be dismissed. (See Cross-Support Memo at 21.) In opposition to Plaintiff's Motion, the Commissioner asserts: (1) substantial evidence supports the ALJ's RFC finding, which, in this instance, was more restrictive than that asserted by Dr. Haimovic and, as such, rendering Dr. Haimovic's opinion without any practical effect (see id. at 13-14, 16; see also id. at 19); (2) pursuant to relevant Social Security regulations, the ALJ need not consider—or discuss—statements that an individual is unable to work, such as those made by Drs. Haimovic and Gregorace about Plaintiff, since "statements on issued reserved to the Commissioner . . . is evidence that is 'inherently neither valuable nor persuasive'" (id. at 15 (quoting 20 C.F.R. § 404.1520b(c))); and, (3) there is substantial evidence supporting the ALJ's finding that Plaintiff was not disabled (see id. at 17 ("The ALJ properly considered the objective medical evidence in finding that Plaintiff's subjective complaints were not entirely consistent with the record."); see also id. at 18-21 (arguing further evidence of Plaintiff's daily activities and conservative treatment supported ALJ's finding).

In reply, Plaintiff maintains the Commissioner mischaracterized the opinions of Drs. Haimovic and Gregorace to support the Commissioner's position that the ALJ properly evaluated those Doctors' opinions. (See Reply at 1.) Plaintiff argues, in essence, the Commissioner glossed over "a key aspect of Dr. Haimovic's opinion where he indicated Plaintiff would not be able to concentrate long enough to complete a work task depending on her pain level" which ability "is essential to being able to maintain employment and is not consistent with a full range of sedentary level work, as claimed by [the Commissioner]." (Id.) According to Plaintiff, the record is replete with her consistently reporting pain in her neck, left arm, and lower back, and such evidence of pain "must be thoroughly considered in calculating the RFC of a claimant." (Id. at 2.) By failing to consider Dr. Haimovic's opinion about Plaintiff's ability to concentrate, which was linked to Plaintiff's complaints of pain, the ALJ erred. (See id.)

Plaintiff further contends "the ALJ did little to comply with the regulations" applicable to disability claims filed after March 27, 2017, when the ALJ "briefly dismissed the [Doctors'] opinions without providing meaningful articulation for her reasoning." (Id. at 3.) She argues: "At their most basic, the amended regulations require that the ALJ explain [his] findings regarding the supportability and consistency for each of the

medical opinions, pointing to specific evidence in the record supporting those findings." (Id. (quoting Raymond M. v. Comm'r of Soc. Sec., No. 5:19-CV-1313, 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021)). Thus, according to Plaintiff, at best, the Commissioner offers post hoc rationalizations for the ALJ's reasoning, which will not do. (See id. at 3.) Hence, Plaintiff seeks remand for further administrative proceedings. (See id. at 4.)

## DISCUSSION

I.  Standard of Review

In Brown v. Commissioner of Social Security, 708 F. Supp. 3d 234 (E.D.N.Y. 2023), Honorable Kiyo A. Matsumoto of this District thoroughly and succinctly articulated the standard the Commissioner must follow in determining a claim of disability, see id. at 241-42, as well as the standard a reviewing district court must utilize when a claimant challenges the Commissioner's determination that the claimant is not disabled, see id. at 242-43. This Court adopts same and incorporates by reference those standards herein.

Generally speaking, in reviewing a final decision of the Commissioner, a district court must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have

been applied." Rucker v. Kijakazi, 48 F.4th 86, 90-91 (2d Cir. 2022) (quoting Estrella v. Berryhill, 925 F.3d 90, 95 (2d Cir. 2019)). District courts will overturn an ALJ's decision only if the ALJ applied an incorrect legal standard, or if the ALJ's ruling was not supported by substantial evidence. See id. (citing Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012)). "[S]ubstantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

Additionally, and of relevance here, "the regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017." Jacqueline L. v. Comm'r of Soc. Sec., 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5844 (Jan. 18, 2017)). Because Plaintiff's claim was filed on December 14, 2018, "the new regulations, codified at 20 C.F.R. §§ 404.1520c and 416.920c, apply." Id. As District Judge Elizabeth A. Wolford explained in Jacqueline L.:

> Pursuant to the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a),

21

416.920c(a).  Further, when a medical source
provides one or more medical opinions, the
Commissioner will consider those medical
opinions from that medical source together
using the factors listed in paragraphs (c)(1)
through (c)(5) of this section. Id.  Those
factors include: (1) supportability; (2)
consistency; (3) relationship with the
claimant, including the length of the
treatment relationship, the frequency of
examinations, purpose and extent of the
treatment relationship, and the examining
relationship; (4) specialization; and (5) any
other factors that "tend to support or
contradict a medical opinion or prior
administrative medical finding." Id. at §§
404.1520c(c), 416.920c(c).

When evaluating the persuasiveness of a
medical opinion, the most important factors
are supportability and consistency. Id. at §§
404.1520c(a), 416.920c(a).  With respect to
"supportability," the new regulations provide
that "[t]he more relevant the objective
medical evidence and supporting explanations
presented by a medical source are to support
his or her medical opinion(s) or prior
administrative medical finding(s), the more
persuasive the medical opinions or prior
administrative medical finding(s) will be."
Id. at §§ 404.1520c(c)(1), 416.920c(c)(1).
With respect to "consistency," the new
regulations prove that "[t]he more consistent
a medical opinion(s) or prior administrative
medical finding(s) is with the evidence from
other medical sources and nonmedical sources
in the claim, the more persuasive the medical
opinion(s) or prior administrative medical
finding(s) will be." Id. at §§
404.1520c(c)(2), 416.920c(c)(2).

The ALJ must articulate his consideration
of the medical opinion evidence, including how
persuasive he finds the medical opinions in
the case record. Id. at §§ 404.1520c(b),
416.920c(b).  "Although the new regulations
eliminate the perceived hierarchy of medical
sources, deference to specific medical
opinions, and assigning 'weight' to a medical

22

> opinion, the ALJ must still articulate how [he
> or she] considered the medical opinions and
> how persuasive [he or she] find[s] all of the
> medical opinions." <u>Andrew G. v. Comm'r of
> Soc. Sec.</u>, No. 3:19-CV-0942 (ML), 2020 WL
> 5848776, at *5 (N.D.N.Y. Oct. 1, 2020)
> (quotations and citation omitted).
> Specifically, <u>the ALJ must explain how he
> considered the "supportability" and
> "consistency" factors for a medical source's
> opinion</u>. 20 C.F.R. §§ 404.1520c(b)(2),
> 416.920c(b)(2). The ALJ may—but is not
> required to—explain how he considered the
> remaining factors. <u>Id.</u>

<u>Id.</u> at 7-8 (emphasis added); <u>see also</u> <u>Regan v. Comm'r of Soc. Sec.</u>,
No. 21-CV-0312, 2024 WL 1259045, at * 8 (E.D.N.Y. Mar. 25, 2024)
("The ALJ must explain how she considered the supportability and
consistency factors when determining the persuasiveness of a
medical source's opinion." (citing <u>Krystle H. v. Comm'r of Soc.
Sec.</u>, No. 20-CV-0855, 2022 WL 888225, at *3 (N.D.N.Y. mar. 25,
2022)); <u>Dayle B. v. Saul</u>, No. 3:20-CV-0359, 2021 WL 1660702, at *4
(D. Conn. Apr. 28, 2021) ("Of these factors, supportability and
consistency are the most important, and ALJs must explicitly
articulate how they considered them." (citing 20 C.F.R. §
416.920c(b)(2)). "If the ALJ fails adequately to explain the
supportability or consistency factors or bases her explanation
upon a misreading of the record, remand is required." <u>Rivera v.
Comm'r of Soc. Sec.</u>, No. 19-CV-4630, 2020 WL 8167136, at *14
(S.D.N.Y. Dec. 30, 2020) (quoted in <u>Regan</u>).

In reviewing the Commissioner's decision:

> "[t]he court shall have power to enter, upon
> the pleadings and transcript of the record, a
> judgment affirming, modifying, or reversing
> the decision of the Commissioner of Social
> Security, with or without remanding the cause
> for a rehearing." 42 U.S.C. § 405(g). Remand
> is warranted where "'there are gaps in the
> administrative record or the ALJ has applied
> an improper legal standard'" and where
> "further findings or explanation will clarify
> the rationale for the ALJ's decision."
> Coleson v. Comm'r of Soc. Sec., No.
> 18-CV-02862, 2020 WL 1989280, at *3 (E.D.N.Y.
> Apr. 26, 2020) (quoting Rosa v. Callahan, 168
> F.3d 72, 82-83 (2d Cir. 1999)).

Blowe v. Comm'r of Soc. Sec., No. 19-CV-2658, 2020 WL 3129062, at

*4 (E.D.N.Y. June 12, 2020); see also Brown, 708 F. Supp. 3d at

243 ("Remand is particularly appropriate where further findings or

explanation will clarify the rationale for the ALJ's decision."

(citing Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)).

II.  The Instant Case

Having reviewed the record presented, it is abundantly

unclear to the Court how the ALJ arrived at her determination of

non-disability notwithstanding her claim to have carefully

considered the evidence.  (See ALJ Decision, R. 69.)  Indeed, as

Plaintiff aptly argues:  "[T]there is a difference between

considering evidence and articulating how [the Agency] consider[s]

evidence."  (Reply at 3 (quoting 82 Fed. Reg. 5844-01, at 5858).)

Of significance, in contravention of the applicable new

regulations, the ALJ has failed to explain her findings regarding

supportability and consistency for each of the Doctors' opinions

24

highlighted above (see supra at 16-17); indeed, she has not pointed
to specific evidence in the record supporting her findings.  But
cf. Jacqueline L., 515 F. Supp. 3d at 11 (affirming the ALJ's
determination of non-disability where "the ALJ explained his
findings regarding the supportability and consistency for each of
the opinions, pointing to specific evidence in the record
supporting those findings").  Rather, as Plaintiff asserts:

> Here, the ALJ did little to comply with the
> regulations.  Instead of explaining her
> findings regarding the supportability and
> consistency for each of the medical opinions,
> she briefly dismissed the opinions without
> providing meaningful articulation of her
> reasoning.  [R.] 70.  "At their most basic,
> the amended regulations require that the ALJ
> explain [his] findings regarding the
> supportability and consistency for each of the
> medical opinions, pointing to specific
> evidence in the record supporting those
> findings."

(Reply at 3 (quoting Raymond M., 2021 WL 706645, at *8 (finding
ALJ erred in providing no substantive explanation that a state
agency opinion was persuasive) (citations and quotations
omitted)).)  The Court agrees.  In turn, the Court concurs with
Plaintiff's contention "the ALJ's flawed analysis left no avenue
for meaningful review."  (Id.)  Indeed, the Court finds the ALJ
Decision is woefully deficient in rationale thereby thwarting its
ability to engage in any meaningful review of said Decision.  Thus,
remand is necessary.  See Rivera, 2020 WL 8167136, at *14; see
also Brown, 708 F. Supp. 3d at 243.

25

–*–*–*–

Because it has determined remand is required in this instance, "the Court need not and does not reach [the parties'] remaining argument[s] . . . ." Kelly v. Comm'r of Soc. Sec., No. 20-CV-5318, 2024 WL 5120051, at *13 (E.D.N.Y. Dec. 16, 2024) (quoting Rowe v. Berryhill, No. 17-CV-0208, 2018 WL 4233702, at *5 (W.D.N.Y. Sept. 6, 2018); further citing Keli Ann D. v. Comm'r of Soc. Sec., No. 23-CV-0765, 2024 WL 3493274, at *7 (N.D.N.Y. July 22, 2024) (same; quoting Rowe); Poceous v. Comm'r of Soc. Sec., No. 20-CV-4870, 2024 WL 3029197, at *15 n.13 (E.D.N.Y. June 17, 2024) (declining to consider plaintiff's further arguments in support of remand upon finding procedural error by ALJ warranting remand)).

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED:** (1) Plaintiff's Motion (ECF No. 11-1) is GRANTED; and (2) the Commissioner's Cross-Motion (ECF No. 15) is DENIED; this matter being REMANDED to the Commissioner for further administrative proceedings; and

**IT IS FURTHER ORDERED**, once Judgment has entered, the Clerk of Court is directed to CLOSE this case.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: May 13, 2025
       Central Islip, New York

26